UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

v.

                                                   **Hon. Hugh B. Scott**

                                                   07CR174A

TAMMI WASHNUK and
TIONA BROOK DUGAS,                                **Report**
                                                         **&**
                          Defendants.               **Recommendation**

This matter has been referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(C) (Docket No. 3). The instant matter before the Court is defendant Tiona Dugas' motion to dismiss the Indictment on speedy trial grounds (Docket No. 14[1]). She also seeks a Bill of Particulars and discovery. The Government in its response seeks reciprocal discovery from Dugas (Docket No. 19, Gov't Response at 30-31). For convenience, these latter requests (which could be considered in a separate Order) will be addressed in this Report & Recommendation.

## BACKGROUND

Defendants are charged in a four-count Indictment, filed July 31, 2007, with importation of controlled substances (on or about October 9, 2004), sale and distribution of controlled

---

[1] In support of this motion, Dugas submits her motion, with her attorney's Affirmation, Docket No. 14; her Memorandum of Law, Docket No. 15; and her Reply Memorandum, Docket No. 21. Her counsel also submitted a letter, dated April 19, 2013, updating this Court on the status of United States v. Hong Wah Cheng, No. 05CR71, referenced by Dugas in this motion and recently dismissed by this Court, see United States v. Cheng, No. 05CR71, Docket Nos. 45 (Report & Recommendation recommending dismissal), 53 (Order adopting Report).
    In response, the Government submits its Response, including exhibits, Docket No. 19.

substances (on that same date), conspiracy to distribute (on or about that date), and attempted conspiracy to import 500 grams or more of a mixture and substance containing methamphetamine and MDMA (Docket No. 1, Indict.).

*Timeline of Prosecution*

Given that Dugas objects to this Indictment on speedy trial and delay in prosecution grounds, a review of the procedural history is in order. Dugas was arrested at the Rainbow Bridge on October 9, 2004 (Docket No. 15, Def. Memo. at 2). A criminal Complaint was filed against defendants on October 12, 2004, United States v. Washnuk, Dugas, 04MJ2186, Docket No. 1. Dugas was released on bond on October 21, 2004 (Washnuk, 04MJ2186, Docket No. 9; Docket No. 15, Def. Memo. at 2). This Complaint was dismissed on June 29, 2006, Washnuk, 04MJ2186, Docket No. 22; according to Dugas, plea negotiations between the parties had halted and the Government agreed to dismiss the Complaint and would proceed to Indictment (Docket No. 15, Def. Memo. at 2; cf. Docket No. 19, Gov't Response at 5). Bail was returned on November 14, 2006 (Washnuk, 04MJ2186, Docket No. 24). On July 31, 2007, the Government filed a then-Sealed Indictment against these defendants (Docket No. 1), and an arrest warrant issued. This case was unsealed on October 29, 2012, and defendants were arraigned (Docket No. 2). The criminal Complaint was never merged with this Indictment and no due diligence reports were filed regarding efforts to locate and obtain Dugas.

The Government claims that Dugas was a fugitive from August 2, 2007 (Docket No. 19, Gov't Response at 5). On November 13, 2008 (fifteen months later), the Office of the United States Attorney for this District sought confirmation of Dugas' address to prepare for her extradition (id.). Immigration and Customs Enforcement ("ICE") in its Buffalo office sought

2

assistance of the ICE Attache in Toronto to verify Dugas' address on November 19, 2008, and again on July 21, 2009 (id., Ex. D). ICE then confirmed Dugas' address in an apartment on Garth Street, Hamilton, on December 3, 2009 (id., Ex. E, id. at 5-6).

In July 2010, the United States Attorney's Office informed ICE that a draft extradition request was still with counsel for the Office of International Affairs (or "OIA") and that the United States Attorney was working on having it finalized (id. at 6, Ex. I, Ex. J). In February 8, 2011, ICE was informed that the extradition request was to be sent to the Office of International Affairs for final approval (id. at 6, Ex. K). On March 7, 2011, the Office of International Affairs requested from the United States Attorney's Office that the final version of the extradition package be reviewed and returned to OIA (id. at 6). After ICE answered the United States Attorney's question, on October 17, 2011, ICE inquired about the status of the extradition request and the United States Attorney reported that the request was still pending with Canada (id.). On November 14, 2011, the United States Attorney signed the extradition request (id. at 6-7).

Based upon this request, Dugas was arrested on March 27, 2012 (id. at 7; see generally Docket No. 21, Def. Reply at 3). After posting bond pending her extradition proceeding and an extradition hearing, Dugas waived extradition on October 17, 2012, and on October 29, 2012, she was transported into United States custody (Docket No. 15, Gov't Response at 7).

Dugas asserts that she resided in Hamilton, Ontario, since 1986, living at the Kennedy Avenue address where she was arrested on the extradition warrant (Docket No. 15, Def. Memo. at 1). She disputes being a fugitive during this time period (id. at 2).

DISCUSSION

I.  Speedy Trial and Delay in Prosecution

   A.  Standard

The Sixth Amendment guarantees defendants the right "to a speedy . . . trial," U.S. Const. amend VI. Both parties agree (Docket No. 15, Def. Memo. at 3; Docket No. 19, Gov't Response at 10) that, in determining whether that right has been violated, courts consider several factors, namely the length of the delay, the reason for the delay, whether defendant asserted her right to a speedy trial, and the prejudice to defendant from the delay, Barker v. Wingo, 407 U.S. 514, 530 (1972); Doggett v. United States, 505 U.S. 647, 654, 656-57 (1992). If a delay is not presumptively prejudicial, the remaining factors need not be considered, Barker, supra, 407 U.S. at 530; Doggett, supra, 505 U.S. at 656; see also id. (length of delay is "part of the mix of relevant facts, and its importance increases with the length of delay"). The Doggett Court stated that "such is the nature of the prejudice presumed that the weight we assign to official negligence compounds over time as the presumption of evidentiary prejudice grows. Thus, our toleration of such negligence varies inversely with its protractedness, cf. Arizona v. Youngblood, 488 U.S. 51 (1988), and its consequent threat to the fairness of the accused's trial." Doggett, supra, 505 U.S. at 657.

   B.  Application

Dugas argues that first three factors weigh heavily in her favor and that prejudice is presumed (Docket No. 15, Def. Memo. at 3).

4

1.  Length of Delay

The parties dispute the duration of the delay and what portions of that period are attributable as delay. Dugas argues that the delay was four years and eight months, from July 31, 2007, Indictment until her extradition arrest on March 7, 2012 (Docket No. 15, Def. Memo. at 2-3; see Docket No. 19, Gov't Response at 10), or 56 months. The Government argues that the period is, at worst, 51 months (from the Indictment to the signed extradition request) or over 35 months (from the Indictment to when the Government commenced the extradition process with the Office of International Affairs, using the July 2010 date when a draft extradition request was circulated) (Docket No. 19, Gov't Response at 10-11). But the Government's description of the initiation is vague as to a specific starting date, referring to the exchange of draft documents between departments of the Executive Branch and no definitive end date is suggested. The Government concedes that the 51-month delay would be deemed presumptively prejudicial (id. at 12), see Doggett, supra, 505 U.S. at 652 n.1 (delay approaching one year was presumptively prejudicial); United States v. Vassell, 970 F.2d 1162, 1164 (2d Cir. 1989) (over eight months commentators found were presumptively prejudicial).

In United States v. Hong Wah Cheng, No. 05CR71, Magistrate Judge Schroeder rejected the forwarding of draft extradition papers as sufficient as the end point for measuring the period of trial delay in that case, finding that the period ended when formal extradition proceedings were initiated, United States v. Cheng, No. 05CR71, 2013 WL 1704912, Docket No. 45, Report & Recommendation at 10 (W.D.N.Y. Jan. 9, 2013) (Schroeder, Mag. J.), adopted, Docket No. 53, Order of Apr. 19, 2013, at 2-3 (Arcara, J.) (see also Docket No. 15, Def. Memo. at 9-10). Magistrate Judge Schroeder did not take the latter event of the arrest on the extradition warrant,

issued about ten months later, Cheng, No. 05CR71, Docket No. 45, Report & Rec. at 3. As Dugas notes in this case (Docket No. 15, Def. Memo. at 10), Cheng is distinguishable because Cheng absconded after posting bail while Dugas had her original bail returned and was not under any compulsion by the United States Government.

This Court agrees and, in Dugas' case, the end for the measure of delay here is November 14, 2011, when the extradition request was signed. Thus, there was 51 months of delay from the sealed Indictment to formal initiation of extradition. Even if a shorter period as argued by the Government is accepted, that period is almost three years long and can be deemed presumptively prejudicial, as the longer period of 51 months.

        2.      Reason for Delay

The Government argues that there was no evidence of a strategy to delay the trial in order to hamper the defense to have this factor weigh against the Government (Docket No. 19, Gov't Response at 14). After outlining the bureaucratic steps leading to initiating the extradition procedure (and Dugas' arrest on the extradition warrant) (id. at 13-14, 5-7), the Government concludes that its pursuit of Dugas "may not be ideal" (id. at 14), but there lacked proof of a strategy of delay in order to hinder her defense and that this delay was "neutral" as mere negligence (id. at 14, 15).

Dugas argues that the Government failed to show due diligence in attempting to locate her or to extradite her (Docket No. 15, Def. Memo. at 5-7).

Dugas, however, need not show that the Government intended to delay to prejudice her. Rather, this factor is to show whether the delay can be excused. If there was a deliberate attempt to delay, the delay should be weighted against the Government, but a more neutral reason of

6

negligence weighs less heavily "but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant," Barker, supra, 407 U.S. at 531, while a valid reason (such as a missing witness, id., or extradition from a foreign country) "should serve to justify appropriate delay," id.

Here, the asserted reason is the Government's negligence. But most of the delay cited above arises from Government inaction (the fifteen months before investigating Dugas' current location to commence extradition) or intra-agency (within the Department of Homeland Security, or the Department of Justice between the United States Attorney and the Office of International Affairs) or interagency correspondence (between and among these agencies). No valid reasons were given for these delays, either in initiating investigations or extradition or for response times between agencies. Thus, the reason for delay factor, even for the neutral reason of Government negligence, favors Dugas.

   3.  Defendant's Assertion of Right

The Government relies upon Dugas' awareness of these charges from the criminal Complaint that was dismissed, concluding that she failed to invoke her right to a speedy trial thereafter (Docket No. 19, Gov't Response at 16). Dugas had her criminal Complaint dismissed on June 29, 2006, a sealed Indictment was filed against her on July 31, 2007, and deemed a fugitive two days later. She was not aware until her 2011 extradition arrest that she faced the dismissed Complaint charges in the form of this sealed Indictment (see also Docket No. 15, Def. Memo. at 5, 8). How could she be expected to invoke her right to a speedy trial of that charge if she was not aware that she faced a trial at all? Dugas believed the case was over, given the dismissal of the criminal Complaint and return of her bail (see id. at 10). While correctly

7

asserting that the period between the dismissal of the criminal Complaint in June 2006 and filing of the Indictment in the end of the following July was not chargeable delay (cf. Docket No. 19, Gov't Response at 10-11), that thirteen-month period cannot be now used by the Government as a basis for Dugas asserting a speedy trial right she had no idea she would need to invoke, cf. 18 U.S.C. § 3161(d)(1), (b) (if charge contained in a complaint is dismissed, a subsequent charge for the same conduct must be filed within thirty days of arrest or service of summons). Therefore, the fact that Dugas did not invoke her speedy trial rights does not excuse the delay here.

    4.  Prejudice to Defendant

Dugas argues, as previously stated, that finding the first three Barker factors in her favor shows that prejudice is presumed (Docket No. 15, Def. Memo. at 3, see also id. at 8; Docket No. 21, Def. Reply Memo. at 6), Doggett, supra, 505 U.S. at 658; United States v. Hernandez, 457 F.3d 416, 421 (5th Cir. 2006). This Court agrees; the other Barker factors clearly show that the delay in prosecuting Dugas was prejudicial.

    5.  Summary

As a result of the consideration above of the Barker factors, Dugas was presumptively prejudiced by this fifty-one month delay. This Court recently encountered a speedy trial issue, United States v. Phalom, 08CR6, Docket No. 32, Report & Rec.; see also Docket No. 33, Def. Objections. In that case, this Court noted that the Sixth Amendment speedy trial guarantee is "'an important safeguard to prevent undue and oppressive incarceration prior to trial, to minimize anxiety and concern accompanying public accusation and to limit the possibilities that long delay will impair the ability of the accused to defend himself.' United States v. Ewell, 383 U.S. 116, 120 (1966), . . . ," United States v. Marion, 404 U.S. 307, 320 (1971). "Inordinate delay between

arrest, indictment, and trial may impair a defendant's ability to present an effective defense," id. Phalom, Docket No. 32, Report & Rec., at 4-5. The issue in Phalom was the when the speedy trial period started given the facts of that case, id. at 4[2]. In Phalom, due diligence reports were filed on a regular basis after that defendant became a fugitive, id. at 2-3.

In the present case, there were no due diligence reports filed for sealed Indictment, no initial declaration defendant was a fugitive. The only record of the Government's efforts to locate and extradite Dugas came in the Government's response to the motion to dismiss, revealing the interagency and intra-agency traffic within ICE and the Department of Justice and between these two agencies.

The Indictment (Docket No. 1) in this case, therefore, should be **dismissed** and Dugas' motion for that relief (Docket No. 14) should be **granted**.

Should this Recommendation not be accepted, and for a complete record, this Court next considers Degas' Bill of Particulars and discovery requests.

II.     Bill of Particulars

Dugas next demands that the Government file a Bill of Particulars (Docket No. 14, Def. Motion, Schedule 2), seeking disclosure of her particular conduct and identity of unnamed co-conspirators (id.). She contends that the Indictment "has only broadly generalized accusations against her with little or no detail" (id., Def. Atty. Affirm. ¶ 5).

---

[2]This Court found that the starting period for speedy trial analysis was when Phalom was indicted and not when he was charged in a criminal Complaint, id. at 4-6. Given the due diligence reports filed with this Court, the Report concludes that there was no unconstitutional delay, id. at 7, and the Report recommended denying Phalom's motion to dismiss the Indictment, id. at 9.

9

Rule 7(f) of the Federal Rules of Criminal Procedure provides that the Court may direct the filing of a Bill of Particulars. The Government opposes these requests because most of the information sought particularized is presented in voluntary discovery and in the criminal Complaint or is information beyond the scope of a Bill of Particulars (e.g., Docket No. 19, Gov't Response at 27).

Bills of Particulars are to be used only to protect a defendant from double jeopardy, to enable adequate preparation of a defense and to avoid surprise at trial. United States v. Torres, 901 F.2d 205 (2d Cir. 1990). The Government is not obligated to "preview its case or expose its legal theory," United States v. LaMorte, 744 F. Supp. 573 (S.D.N.Y. 1990); United States v. Leonelli, 428 F. Supp. 880 (S.D.N.Y. 1977); nor must it disclose the precise "manner in which the crime charged is alleged to have been committed," United States v. Andrews, 381 F.2d 377 (2d Cir. 1967). Notwithstanding the above, there is a special concern for particularization in conspiracy cases, United States v. Davidoff, 845 F.2d 1151 (2d Cir. 1988), but the Government need not prove overt acts in furtherance of the conspiracy, United States v. Knuckles, 581 F.2d 305, 311 (2d Cir.), cert. denied, 439 U.S. 986 (1978), or particularize on the facts surrounding the formation of the conspiracy or when a given defendant joins it, United States v. Iannelli, 53 F.R.D. 482 (S.D.N.Y. 1971) (id. ¶ 29). While it is within this Court's sound discretion to order the filing of a Bill of Particulars, Wong Tai v. United States, 273 U.S. 77, 82 (1927), the burden is upon defendants to show that non-disclosure of the requested particulars would lead to prejudicial surprise at trial or would adversely affect defendants' rights, id. (Docket No. 55, Gov't Atty. Aff. ¶ 24). Any particularization confines the Government's proof to the particulars

furnished, United States v. Glaze, 313 F.2d 757, 759 (2d Cir. 1963); United States v. Murray, 297 F.2d 812, 819 (2d Cir.), cert. denied, 369 U.S. 828 (1962) (id. ¶ 27).

Upon review of the Indictment and the extent of discovery produced in this case to defendants, this Court finds that Avery is **not entitled** to a Bill of Particulars from the Government here inasmuch as he is sufficiently advised of the charges against him to allow for the proper preparation of a defense, to avoid surprise at trial, and to protect the defendant from double jeopardy.

III.     Discovery

Dugas next seeks discovery. While acknowledging that she received voluntary discovery (Docket No. 14, Def. Atty. Affirm. ¶ 6), Dugas is seeking an inventory of documents that has not been disclosed (Docket No. 15, Def. Memo. at 22). For example, Dugas wants results (from underlying documentation) as well as reports from scientific testing (Docket No. 15, Def. Memo. at 23). The Government responds that in general it has complied fully with its discovery obligations to each defendant (Docket No. 19, Gov't Response at 19), detailing production to date and intended to be furnished (id. at 19-26).

Although there is no general constitutional right to pretrial discovery in a federal criminal case, a defendant does have a pretrial discovery right with respect to certain matters. For example, under the Fifth Amendment's due process clause, a defendant is entitled to specific exculpatory evidence which is material either to guilt or punishment. In addition, the government has certain disclosure obligations under Rule 16 of the Federal Rules of Criminal Procedure and the Jencks Act, 18 U.S.C. § 3500.

III.     Government's Motion for Reciprocal Discovery

The Government seeks to inspect and copy documents and other items in Dugas' custody, possession or control (Docket No. 19, Gov't Response at 30-31), without any apparent objection by her. Under Rule 16, the Government is entitled to production of documents in a defendant's possession that each defendant intends to use in his own case-in-chief. Defendant Dugas is reminded of each of her obligations under Rule 16 to produce pursuant to the Government's notice for discovery, therefore, the Government's motion (Docket No. 19, Gov't Response at 30-31) if this prosecution survives is **granted**.

## CONCLUSION

Based upon the above, it is recommended that defendant Tiona Dugas motion (Docket No. 14) to dismiss the Indictment on speedy trial grounds be **granted**.

For a complete record an in the event this recommendation is not accepted, her motion for a Bill of Particulars (id.) is **denied** and her motion for discovery (id.) is **granted in part, denied in part** as specified above, and the Government's motion for reciprocal discovery (Docket No. 19, Gov't Response at 30-31) is **granted**.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report &**

**Recommendation in accordance with 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b) (effective December 1, 2009) and W.D.N.Y. Local Civil Rule 72.3(a).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME OR TO REQUEST AN EXTENSION OF SUCH TIME WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT DISTRICT COURT'S ORDER ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988).

The District Court on de novo review will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

Finally, the parties are reminded that, pursuant to W.D.N.Y. Local Civil Rule 72.3(a)(3), "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 72.3(a)(3) may result in the District Court's refusal to consider the objection.**

SO ORDERED.

                                                              */s/ Hugh B. Scott*
                                                            Hon. Hugh B. Scott
                                                        United States Magistrate Judge

Dated: Buffalo, New York
        May 14, 2013